The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts as those reached by the Deputy Commissioner, with some modification but modifies the conclusions and holding of the Deputy Commissioner. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the defendant-employer and the plaintiff-employee at all relevant times herein.
3. Plaintiff sustained an injury by accident while in the course and scope of her employment with defendant-employer on April 27, 1992.
4. Hartford Accident Indemnity Company provided workers' compensation insurance coverage at the time of the accident herein.
5. Plaintiff's average weekly wages were $374.64 per week at the time of the incident herein.
6. Defendant-employer submitted a Form 19 dated September 27, 1994, to the Industrial Commission. Subsequently, defendant-employer prepared and filed a Form 28B dated June 21, 1995.
7. Defendants have paid temporary total disability compensation to plaintiff from March 15, 1993 to May 11, 1993 and from February 10, 1994 to March 16, 1994.
8. Defendants paid temporary partial disability compensation to plaintiff at two-thirds of the difference between her new and old wage per week from May 12, 1993 to February 9, 1994 and from March 17, 1994 to November 18, 1994.
9. The depositions and medical records of Drs. Timothy W. McGowan, Richard Adams and Gary L. Sigmon are admitted into evidence.
10. The issues to be determined at the hearing before the Deputy Commissioner were as follows:
 a) Whether plaintiff is entitled to any additional workers' compensation benefits?
b) If so, what amount and over what period of time?
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, plaintiff was forty-three years old. She worked for the defendant-employer for twenty-three years.
2. Prior to her admittedly compensable accident, plaintiff primarily worked as a knitter for defendant-employer. The knitting job normally required lifting and carrying of 20 pounds or more, bending, stooping, reaching, lifting overhead and constant speed. Plaintiff normally worked from 8 to 16 hours of overtime each week.
3. Plaintiff injured her back on April 27, 1992 while pushing a cart. She was initially seen and treated by Dr. John Bond. Dr. Bond treated plaintiff's condition with medication, physical therapy and rest.
4. The parties entered into a Form 21 Agreement on or about August 10, 1992, wherein defendants agreed that plaintiff had sustained an injury to her back by accident while in the course and scope of her employment with defendant-employer on April 27, 1992. The parties agreed that plaintiff's average weekly wages at the time of her accident were $374.64, subject to verification. The parties agreed that plaintiff's disability began on April 28, 1992, and defendants agreed to pay her $249.77 per week in temporary total disability benefits starting on May 5, 1992 and continuing for necessary weeks. This agreement was approved by the Industrial Commission on September 9, 1992.
5. On or about January 1, 1993, the parties entered into a Form 26 Supplemental Agreement wherein the defendants agreed to pay plaintiff temporary partial benefits beginning November 23, 1992 and continuing for the necessary weeks. Plaintiff's average weekly wages varied at this time. This agreement was approved by the Industrial Commission on March 23, 1993.
6. Plaintiff's condition continued to deteriorate, and she was sent to a number of other doctors, with Dr. Timothy W. McGowan being the last doctor to treat her. She was also seen by Dr. Richard Adams who saw her initially on April 19, 1996.
7. In May 1993, plaintiff attempted to return to work in the position of re-working for four hours per day. She worked in this position until February 9, 1994, when due to her pain, bowel and decreased bladder functions, she was removed by Dr. McGowan. Dr. McGowan imposed restrictions of no lifting over 15 pounds, no repetitive bending, no twisting or reaching. Dr. McGowan also required that plaintiff be allowed to shift positions from sitting to standing frequently. Plaintiff was paid temporary partial disability benefits from May 12, 1993 through February 9, 1994. When plaintiff was taken out of work, defendants resumed payment of temporary total disability benefits from February 10, 1994 through March 16, 1994.
8. Defendant-employer placed plaintiff in an office position where she answered the phone, made photocopies and filed papers. Plaintiff earned $6.93 per hour in this position, and she was paid temporary partial disability benefits from March 17, 1994 through November 18, 1994. Without authorization from the Commission, defendants stopped paying plaintiff any temporary partial disability although she continued to earn less than her pre-injury wages. Plaintiff continued to work in the office position until June 30, 1995, when the position was phased out by defendant-employer.
9. When defendant-employer phased out plaintiff's office position, it offered her a hosiery re-work position, a shipping clerk position and a customer service position. Plaintiff did not think that she could perform any of the positions that were offered. Defendants are only contending that plaintiff was or should have been able to perform the position of re-work and have not offered any evidence concerning her ability to perform the other two positions. Defendants did not have any of these positions reviewed by plaintiff's treating doctors to ascertain whether the jobs were within her restrictions, and the re-work position is the same position from which Dr. McGowan had removed plaintiff previously.
10. Plaintiff was told to contact Mr. Propst to inform him whether she was going to accept the position or not, but she was given a very limited time period to make a decision. Mr. Propst was the Director of Industrial Relations for the defendant-employer, and some of his job duties included human resources, risk management and employee benefits. Plaintiff requested that she be allowed to see the re-work position offered by defendant-employer, but she was never shown the position. Plaintiff tried to contact Mr. Propst, but he refused to return any of her calls and failed at the hearing to offer any reason for not returning her calls.
11. In June 1995, Drs. McGowan and Adams were asked whether plaintiff could perform the position of re-work. Dr. Adams indicated that he did not know because he did not see plaintiff until approximately one year later. Dr. McGowan indicated that he would not have placed her in the re-work position in June of 1995. When given a description of the re-work position by defendants at his deposition on May 14, 1997, Dr. McGowan stated that he would have allowed her to try the position at that time. Dr. McGowan stood by his position that he would not have allowed plaintiff to attempt the re-work position in 1995.
12. Plaintiff was justified in not accepting the position of re-work because she was never shown the position although she asked the defendant-employer to do so and because the job was the same one from which Dr. McGowan had removed her previously because it was not within her restrictions. At the time plaintiff requested to see the job, defendant-employer's attorney was directing what was being sent to plaintiff by defendants and plaintiff was not represented by counsel at that time.
13. Dr. Gary Sigmon, a vocational consultant with Blue Ridge Vocational Services, performed a vocational consultation of plaintiff. Based on his evaluation, Dr. Sigmon testified that there were no jobs available to the plaintiff as described in the Dictionary of Occupational Titles. As a result of the plaintiff's condition, he felt that she did not fall completely in any one category of work, light duty or sedentary work. Further, Dr. Sigmon testified that there were no jobs available to the plaintiff in the national economy that would not have to be significantly modified.
14. Plaintiff's average weekly wages at the time of her admittedly compensable injury by accident were $374.64, yielding a compensation rate of $249.77.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On April 27, 1992, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of the compensable injury by accident, plaintiff was temporarily partially disabled and entitled to receive compensation at the rate of two-thirds (2/3) of the difference between her wages earned before and after her compensable injury for the period of November 19, 1994 to June 30, 1995. N.C. Gen. Stat. § 97-30. As ordered previously in the Interim Order by Deputy Commissioner Glenn dated April 21, 1997, this compensation is subject to a 10% penalty. N.C. Gen. Stat. § 97-18(g).
3. As a result of the injury by accident of April 27, 1992, plaintiff is entitled to total disability compensation in the amount of $249.77 per week for the period of time from July 1, 1995 and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to payment by defendants of the medical expenses incurred for the treatment of the injuries she sustained on April 27, 1992, and any further treatment that tends to effect a cure, give relief and/or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
5. Plaintiff was justified in not accepting the positions that were offered to her by defendant-employer. N.C. Gen. Stat. § 97-32.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 A W A R D
1. Defendants shall pay to plaintiff temporary partial disability compensation at a rate of two-thirds of the difference between her wages earned before and after the compensable injury for the period from November 19, 1994 to June 30, 1995. This amount, plus the 10% penalty, has already been paid by defendants.
2. Subject to attorney's fees hereinafter awarded, defendants shall pay to plaintiff total disability benefits at the rate of $249.77 per week from July 1, 1995 until further order of the Industrial Commission. All accrued compensation shall be paid in one lump sum.
3. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury.
4. An attorney's fee of twenty-five percent (25%) of the compensation due plaintiff herein is awarded to plaintiff's counsel and shall be deducted from plaintiff's compensation and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs of this action.
This the ___ day of September 1998.
 S/ _______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _____________________ THOMAS J. BOLCH COMMISSIONER
S/ _____________________ RENÉE C. RIGGSBEE COMMISSIONER